IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Civil Case No. 21-2393 |
| | ) |
| JOHN RIFE, | ) |
| | ) |
|     Defendant. | ) |

## COMPLAINT

Plaintiff United States of America, on behalf of the Secretary of Agriculture ("Secretary"), brings this civil action to recover penalties against Defendant John Rife d/b/a Rife Livestock or JR Cattle ("Defendant") for violations of the Packers and Stockyards Act, 1921, as amended and supplemented, 7 U.S.C. § 181 et seq. (hereinafter the "Act" or the "P&SA"), and the regulations promulgated pursuant thereto, 9 C.F.R. § 201.1 et seq. (hereinafter the regulations), and to request that the Court order Defendant to be enjoined permanently from violating prior consent decrees.

## PARTIES

1. Plaintiff is the United States of America, bringing this action on behalf of the Secretary in his official capacity.

2. Defendant is an individual who at all times material hereto was engaged in the business of a market agency buying livestock on commission, as defined by 7 U.S.C. § 201(c), and as dealer buying and selling livestock for his own account or the account of others, as defined by 7 U.S.C.§ 201(d)).

3. Defendant has his principal place of business at 10075 US Hwy 59, Oswego, KS 67356.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States, and pursuant to 28 U.S.C. § 1345, because this action has been commenced by the United States. In addition, 7 U.S.C. §§ 215 and 216 of the P&SA empower the Attorney General of the United States to seek judicial enforcement of an order of the Secretary by filing suit in the district where the defendant has his principal place of business. *See* 7 U.S.C. §§ 215-216. The P&SA empowers the Attorney General of the United States to initiate appropriate proceedings under the Act to be commenced and prosecuted in the proper courts of the United States. *See* 7 U.S.C. §224.

5. Venue is proper in the District of Kansas under 28 U.S.C.§ 1391(b), as at all times material hereto Defendant had his official place of business in this District and a substantial part of the events giving rise to the claim occurred in this District.

## BACKGROUND

### I. Overview of pertinent statutes

6. The P&SA regulates the conduct of packers, swine dealers, live poultry dealers, stockyard owners, auction markets, market agencies, and dealers, imposing certain affirmative requirements on these entities and proscribing certain conduct by them. *See* 7 U.S.C. § 181 *et seq*. The Agricultural Marketing Service's Fair Trade Practice's Program, Packers and Stockyards Division of the United States Department of Agriculture ("USDA") is responsible for administering and enforcing the Act and investigating concerns regarding unfair and anticompetitive practices in these markets.

7. 7 U.S.C. § 201(c) defines a "market agency" as "any person engaged in the business of (1) buying or selling in commerce livestock on a commission basis or (2) furnishing livestock services."

8. 7 U.S.C. § 20l(d) defines a "dealer" as "any person, not a market agency, engaged in the business of buying or selling in commerce livestock, either on his own account or as the employee or agent of the vendor or purchaser."

9. 7 U.S.C. § 203 and 9 C.F.R. § 201.10(a) require any person who carries on the business of a market agency or dealer as defined in 7 U.S.C. § 201 to apply for registration with the Secretary and to be registered with the Secretary in such manner as the Secretary may prescribe.

10. 7 U.S.C. § 204 and 9 C.F.R. § 201.29(a) require market agencies and dealers under the P&SA to execute and maintain a reasonable bond on forms approved by the Administrator to secure the performance of their obligations. "Every market agency buying on a commission basis and every dealer buying for his own account or for the accounts of others shall file and maintain a bond. If a registrant operates as both a market agency buying on a commission basis and as a dealer, only one bond to cover both buying operations need be filed." 9 C.F.R. § 201.29(b).

11. 7 U.S.C. § 213 states that "[i]t shall be unlawful for any … dealer to engage in or use any unfair, unjustly discriminatory, or deceptive practice or device in connection with determining whether persons should be authorized to operate at the stockyards, or with the receiving, marketing, buying, or selling on a commission basis or otherwise, feeding, watering, holding, delivery, shipment, weighing, or handling of livestock."

12. 7 U.S.C. § 221 requires that every "dealer shall keep such accounts, records, and memoranda as fully and correctly disclose all transactions involved in his business, including the true ownership of such business by stockholding or otherwise."

13. 7 C.F.R. § 3.91 prescribes the following civil penalties relevant to the conduct described in the Complaint:

3

    a.    Civil penalty for a livestock market agency or dealer failure to register, codified at 7 U.S.C. § 203, has a maximum of $1,875 [$1,913] and not more than $94 [$96] for each day the violation continues.

    b.    Civil penalty for a stockyard owner, livestock market agency, or dealer, who engages in or uses any unfair, unjustly discriminatory, or deceptive practice or device in connection with determining whether persons should be authorized to operate at the stockyards, or with receiving, marketing, buying, or selling on a commission basis or otherwise, feeding, watering, holding, delivery, shipment, weighing, or handling of livestock, codified at 7 U.S.C. § 213(b), has a maximum of $27,500 [$28,061].

    c.    Civil penalty for a stockyard owner, livestock market agency, or dealer, who knowingly fails to obey any order made under the provisions of 7 U.S.C. §§ 211, 212, or 213, codified at 7 U.S.C. § 215(a), has a maximum of $1,875 [$1,913].

7 C.F.R. § 3.91 (effective Dec. 5, 2017 – March 13, 2018) [bracketed text represents the penalties in effect March 14, 2018 to June 16, 2020.]

14.    7 U.S.C. § 216 provides for the following pertinent relief:

If any stockyard owner, market agency, or dealer fails to obey any order of the Secretary other than for the payment of money while the same is in effect, the Secretary, or any party injured thereby, or the United States by its Attorney General, may apply to the district court for the district in which such person has his principal place of business for the enforcement of such order. If after hearing the court determines that the order was lawfully made and duly served and that such person is in disobedience of the same, the court shall enforce obedience to such order by a writ of injunction or other proper process, mandatory or otherwise, to restrain such person, his officers, agents, or representatives from further disobedience of such order or to enjoin upon him or them obedience to the same.

**II.**    **Facts relating to the prior consent decrees**

15. On December 18, 2008, an Administrative Law Judge (ALJ) of the USDA, acting under authority delegated to him by the Secretary to perform regulatory functions, issued a Decision Without Hearing by Reason of Consent in *In re: John Rife*, P&S Docket No. D-08-0020 ("2008 Consent Decision"), attached hereto as Exhibit A.

16. The 2008 Consent Decision was lawfully entered upon the basis of a complaint issued and served upon Defendant under provisions of the Act.

17. The 2008 Consent Decision, in pertinent part, suspended Defendant's registration under the Act for a period of five (5) years, although the Consent Decision could be modified after 200 days upon certain circumstances. The United States is unaware of any modifications to the 2008 Consent Decision.

18. On May 2, 2012, the U.S. District Court for the District of Kanas issued a Consent Decree in *United States of America v. John Rife*, Civil Action No. 12-1160-SA ("2012 Consent Decree"), attached hereto as Exhibit B.

19. The 2012 Consent Decree found that Defendant on 18 separate occasions in 2009 had knowingly acted as a dealer under without being registered and bonded in violation of the PS&A and the 2008 Consent Decision.

20. The 2012 Consent Decree permanently enjoined Defendant "from engaging in business, within the meaning of the Act, in any capacity for which registration and bonding are required under the Act, without being registered with the Secretary of Agriculture and furnishing and maintaining an adequate bond or its equivalent as required by the Act and the regulations."

21. The 2012 Consent Decree stated, "[a]ny future violations of the Act may result in the requirement that the full civil penalty, plus interest, be paid in addition to other assessed civil penalties and/or contempt actions as this Court deems appropriate."

22. On March 2, 2017, the U.S. District Court for the District of Kanas issued another Consent Decree between the parties, in *United States of America v. John Rife d/b/a Rife Livestock*, Civil Action No. 17-02082-JAR-KGS ("2017 Consent Decree"), attached hereto as Exhibit C. The 2017 Consent Decree states:

> Beginning on or about February 9, 2012, and continuing through April 22, 2013, Plaintiff alleges that Defendant purchased $1,980,643.79 worth of livestock in twenty-three (23) transactions wherein Defendant operated as a market agency buying on commission. During this same time period, Plaintiff alleges that Defendant also purchased $1,224,345.52 worth of livestock in twenty-three (23) other transactions wherein Defendant operated on a dealer basis as the agent of a vendor or purchaser. Plaintiff alleges that Defendant knowingly did so without being validly registered and bonded as required by the Act and in violation of the Secretary's December 18, 2008 Consent Order, and this Court's May 2, 2012 Consent Decree.
>
> Plaintiff further has alleged that when asked about his conduct as a market agency and/or dealer, Defendant told representatives of the Secretary that he did not keep records and other memoranda that fully disclosed his business transactions and refused to make available, upon request, what records he did keep in violation of Section 401 of the Act (7 U.S.C. § 22 l).
>
> Without admitting liability, Defendant acknowledges the sufficiency of Plaintiff's allegations and evidence. …

Exhibit C, 2017 Consent Decree, at 3.

23. The 2017 Consent Decree again permanently enjoined Defendant "from engaging in business, within the meaning of the Act, in any capacity for which registration and bonding are required under the Act, without being registered with the Secretary of Agriculture and furnishing and maintaining an adequate bond or its equivalent as required by the Act and the regulations."

24. The 2017 Consent Decree further permanently enjoined Defendant "from engaging in business, within the meaning of the Act, in any capacity for which registration and bonding are required under the Act, without keeping such accounts, records, and memorandum as fully and

correctly disclose all transactions involved in his business, and from withholding such documentation from the Secretary or his agent upon proper request."

25. The 2017 Consent Decree states that, "[a]ny violations of the Act not resolved within this Consent Decree may result in the requirement that the full civil penalty, plus interest, be paid in addition to other assessed civil penalties and/or contempt actions as this Court deems appropriate."

### III. Facts relating to Defendant's conduct since the 2017 Consent Decree

26. On January 5, 2018, AMS sent Defendant a Notice of Default ("NOD") and informed him that he must register and procure, file and maintain a bond/bond equivalent of no less than $75,000.

27. Defendant received the NOD on January 16, 2021.

28. Beginning on or about February 5, 2018, and continuing through March 26, 2019, Defendant purchased cattle in at least fifty-three (53) transactions.

29. Defendant operated on a dealer basis as an agent on behalf of Gregory W. Peck, d/b/a Peck Bros. Cattle Order Buying ("Peck").

30. In the fifty-three (53) transactions, Defendant purchased cattle from the following stockyards: (1) Tulsa Stockyards, Inc. in Tulsa, Oklahoma; (2) Welch Stockyards, LLC in Welch, Oklahoma; and (3) South Coffeyville Stockyards in Coffeyville, Oklahoma.

31. Of the fifty-one (51) transactions mentioned above, twelve (12) were conducted before March 14, 2018, and forty-one (41) were conducted on or after March 14, 2018.

32. Peck paid the stockyards directly for all purchases made by Defendant under Peck's name.

33. Peck then sold the majority of the cattle back to Defendant.

34. Beginning on or about March 3, 2018, and continuing through June 11, 2018, Defendant sold cattle in transactions at Welch Stockyards, LLC using the following eight (8) fictitious names: (1) Slash S. Ranch; (2) Bennet Farms; (3) Cecil Jones; (4) Les March, (5) Frank Gordon; (6) Robert Gonzalez; (7) Wes Austin; and (8) Harold Cline.

35. In addition to Peck's account, Defendant also purchased cattle at the stockyards under the account of Eddie McCoin of Afton, Oklahoma ("McCoin").

36. On numerous occasions in 2018, Defendant directed the stockyards to issue checks on the sale of cattle to one of Defendant's fictious names. Defendant utilized fictious names on checks in eleven (11) transactions between January 16, 2018 and March 13, 2018, and in thirty-nine transaction between March 14, 2018 and June 16, 2020.

37. Defendant endorsed false checks under his fictitious name and then surrendered the checks to Eddie McCoin as payment of money Defendant owed McCoin.

38. Defendant also directed the stockyards to deduct unwarranted and excessive hauling charges as a line item from the gross sales invoices and remitted checks, often exceeding fifty percent (50 %) of the gross sales proceeds.

39. These excessive hauling charges were a cover for Defendant's income on the sale of the cattle.

40. Between February 13, 2018 and June 26, 2018, Welch Stockyards, LLC permitted Defendant to take hauling charges of $653,325 on livestock sold for $846,650.31, thereby remitting payment on the livestock of $187,224.46 or 22.1% of value.

41. Between February 9, 2018 and June 22, 2018, South Coffeyville Stockyards, Inc. permitted Defendant to take hauling charges of $226,368.57 on livestock sold for $296,047.83, thereby remitting payment on the livestock of $63,929.72 or 21.6% of value.

42. On November 27, 2018, Defendant met with two agents from the USDA at Defendant's pens located at 10048 Woodson Rd, Oswego, Kansas. During this meeting, Defendant admitted to the USDA agents that he was trading and buying cattle for Peck and Eddie McCoin, consigning cattle under false names, and that once the stockyards issued the consignors' check under the false names, he would falsify the signature and give the checks as payment to McCoin.

## COUNT I: VIOLATIONS OF THE PACKERS AND STOCKYARDS ACT

43. All preceding paragraphs are reincorporated and re-alleged in Count 1.

44. Defendant knowingly violated 7 U.S.C. §§ 203, 213(a), sections 201.10(a) and 201.29(a) of the regulations, the 2008 Consent Decision, the 2012 Consent Decree, and the 2017 Consent Decree by operating on a dealer basis as the agent of a vendor or purchaser with a suspended registration and no adequate bond or bond equivalent in fifty-three (53) separate transactions.

45. Defendant knowingly violated 7 U.S.C. §§ 221, 213(a), and section 201.94 of the regulations, and the 2017 Consent Decree when he failed to maintain required records, make required records available upon request, and generated false records including false invoicing and fictitious names on checks involved in the above described transactions.

## COUNT II: INDIRECT CIVIL CONTEMPT

46. All preceding paragraphs are reincorporated and re-alleged in Count 2.

47. Defendant is in indirect civil contempt of court by acting as a dealer as alleged in paragraphs 38 and 39 above violated this Court's 2012 Consent Decree and 2017 Consent Decree, which permanently enjoined Defendant from engaging in business within the meaning of the act for which registration and bonding are required without being registered and bonded.

48. Defendant is in indirect civil contempt of court by failing to maintain required records, make required records available upon request, and by generating false records, Defendant violated this Court's 2017 Consent Decree, which permanently enjoined Defendant from engaging business within the meaning of the act without keeping such accounts, records, and memorandum as fully and correctly disclose all transactions involved in his business, and from withholding such documentation from the Secretary or his agent upon proper request.

49. The 2012 and 2017 Consent Decrees were clear and valid orders issued by the United States District Court for the District of Kansas that permanently enjoined Defendant from the above conduct.

50. Additionally, it is believed that Defendant continues to operate as a market agency buying on commission and on a dealer basis as the agent of a vendor or purchaser while failing to be properly registered and failing to maintain an adequate bond or bond equivalent, in further contravention of the Act and the provisions of the 2012 and 2017 Consent Decrees.

**WHEREFORE**, Plaintiff, the United States of America, prays on both Counts I and II:

1. That the Court issue judgment in favor of the United States and against the Defendant.

2. That the Court enter judgment against Defendant in an amount totaling $4,589,161 based on the following fines:

    a. Defendant's failures to register in violation of 7 U.S.C. §§ 203, 204, and 9 C.F.R. § 201.29(a), the amounts of

    - $22,500 for his twelve (12) offenses occurring between January 16, 2018 and March 13, 2018;

- $78,433 for his forty-one (41) offenses occurring between March 14, 2018 and June 16, 2020;

- $5,264, constituting the daily penalty for fifty-six (56) days at $94.00 per day for the period between January 16, 2018 and March 13, 2018;

- $79,200, constituting the daily penalty for eight hundred and twenty-five (825) days at $96.00 per day for the period between March 14, 2018 and June 16, 2020;

- $32,500, constituting the daily penalty for three hundred and twenty-five (325) days at $100.00 per day for the period between June 17, 2020 and May 8, 2021;

- $8,484, constituting the daily penalty for eighty-three (83) days at $101.00 per day for the period between May 9, 2021 up through and including July 31, 2021;

b. Defendant's ongoing operation without a bond in violation of 7 U.S.C. §§ 204, 213(a), and 9 C.F.R. § 201.29(a), the amounts of

- $330,000, consisting of $27,500 for each of Defendant's twelve (12) offenses occurring between January 16, 2018 and March 13, 2018;

- $1,150,501, consisting of $28,061 for each of Defendant's forty-one (41) offenses occurring between March 14, 2018 and June 16, 2020;

c. Defendant's false or misleading records in violation of 7 U.S.C. §§ 213(a), 221, and 9 C.F.R.§§ 9 C.F.R. §§ 201.43-201.49

- $330,000, consisting of $27,500 for each of Defendant's twelve (12) offenses of false invoicing occurring between January 16, 2018 and March 13, 2018;

- $1,150,501, consisting of $28,061 for each of Defendant's forty-one (41) offenses of false invoicing occurring between March 14, 2018 and June 16, 2020;

- $302,500, consisting of $27,500 for each of Defendant's eleven (11) offenses of falsifying checks occurring between January 16, 2018 and March 13, 2018;

- $1,094,379, consisting of $28,061 for each of Defendant's thirty-nine (39) offenses of falsifying checks occurring between March 14, 2018 and June 16, 2020;

    d.    $5,000 for false records under 7 U.S.C. § 221.

    3.    That the Court hold Defendant in contempt of the 2012 Consent Decree and the 2017 Consent Decree and provide whatever relief is deemed fair, proper, and necessary to obtain Defendant's future compliance with the 2012 and 2017 Consent Decrees, including, but not limited to reinstating previously deferred penalties, as provided for in Defendant's previous Consent Decrees as:

    a.    Reinstating $60,450 of deferred penalties found in the 2012 Consent Decree with interest from May 2, 2012 at the statutory rate provided for in 28 U.S.C. § 1961;

  b. Reinstating $29,437.50 of deferred penalties found in the 2017 Consent Decree with interest from March 2, 2017 at the statutory rate provided for in 28 U.S.C. § 1961.

4. That the Court permanently enjoin Defendant from failing to keep and to make available, upon request, records and memoranda that fully disclose his business transactions as a market agency and a dealer, and from engaging in any business within the meaning of the Act for which registration and bonding are required without being registered and bonded.

5. That the Court permanently enjoin Defendant from engaging in business, within the meaning of the Act, in any capacity for which registration and bonding are required under the Act, without keeping such accounts, records, and memorandum as fully and correctly disclose all transactions involved in his business, and from withholding such documentation from the Secretary or his agent upon proper request.

6. That Defendant pay the costs of this proceeding.

7. That the United States be awarded any further relief the Court deems just and proper.

         Respectfully submitted,

         DUSTON J. SLINKARD
         Acting United States Attorney
         District of Kansas

         *s/ Steven W. Brookreson, II*
         STEVEN W. BROOKRESON, II
         Assistant United States Attorney
         Ks. S. Ct. No. 28106
         500 State Avenue, Suite 360
         Kansas City, Kansas 66101
         (913) 551-6730 (telephone)
         (913) 551-6541 (facsimile)
         Email: Steven.Brookreson@usdoj.gov
         Attorneys for Defendant

**PLAINTIFF'S DESIGNATION OF PLACE OF TRIAL**
**PURSUANT TO DISTRICT OF KANSAS LOCAL RULE 40.2**

Plaintiff, United States of America, hereby designates Kansas City, Kansas, as the place of trial for this matter.

Respectfully submitted,

DUSTON J. SLINKARD
Acting United States Attorney
District of Kansas

*s/ Steven W. Brookreson, II*
STEVEN W. BROOKRESON, II
Assistant United States Attorney
Ks. S. Ct. No. 28106
500 State Avenue, Suite 360
Kansas City, Kansas 66101
(913) 551-6730 (telephone)
(913) 551-6541 (facsimile)
Email: Steven.Brookreson@usdoj.gov
Attorneys for Defendant